FILED
SUPERIOR COURT
OF GUAM

2014 NOV 12 PM 3: 57

CLERK OF COURT
BY:



## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO. CF0355-14 |
| v. | |
| SHAUN MARTINEZ, | **DECISION AND ORDER** |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on October 9, 2014 on Defendant Shaun Martinez's Motion to Suppress. Attorney Zachary C. Taimanglo, Esq. represented Defendant. Assistant Attorney General Nicole D. Driscoll, Esq. represented the Government. Having reviewed the pleadings and the evidence presented the Court now issues the following Decision and Order.

## BACKGROUND

On July 25, 2014, Defendant, along with two other co-defendants were indicted of the following offenses: 1) Conspiracy to Commit Robbery (As a 2nd Degree Felony); 2) Robbery (As a 3rd Degree Felony); and 3) Assault (As a Misdemeanor) (Two Counts). (Indictment, Jul. 25, 2014). The charges stem from an alleged robbery that occurred at the residence of Mr. Young Sul Kim and Mrs. Ok Ja Kim where Defendant and co-actors allegedly followed the couple, parked behind them in their driveway and proceeded to rob them.

On August 19, 2014, Defendant filed a Motion to Sever and a Guam Rules of Evidence ("GRE") 404(b) Motion *in limine*. The Court granted the severance Motion on August 26,

2014. The Motion *in limine* remains outstanding. On September 11, 2014, Defendant filed a Motion to Suppress evidence obtained in violation of Defendant's Miranda rights. On October 9, 2014, the Government filed its Opposition to Defendant's Motion to Suppress. That same day, the Court held an evidentiary hearing on Defendant's Motion to Suppress and took the matter under advisement. This Decision and Order will address Defendant's GRE 404(b) Motion *in limine* and Motion to Suppress.

## DISCUSSION

### Motion *in limine*

Defendant moves to preclude the Government's use of Defendant's prior acts pursuant to GRE 404(b). Rule 404(b) provides:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

6 GCA § 404(b) (2005). In order for evidence of prior bad acts to be admissible, the evidence must: "(i) prove a material element of the crime currently charged; (ii) show similarity between the past and charged conduct; (iii) be based on sufficient evidence; and (iv) not be too remote in time." *People v. Evaristo*, 1999 Guam 22 ¶ 11 (citing *United States v. Hinton*, 31. F.3d 817, 822 (9th Cir. 1994)).

At the outset, although the rule provides that the Government provide reasonable notice *upon request* by the accused, the Court notes that Defendant's Request for Discovery and Notice did not specifically request notice of the Government's intention to introduce 404(b) evidence. *See* Request for Discovery and Notice, Aug. 6, 2014. Further, nothing in the Court's file indicates that the People intend to introduce any 404(b) evidence of prior acts. Thus, whether or not the Government intends to use any 404(b) evidence remains unknown.

However, to the extent Defendant's Motion alerts the Government to provide such notice, the Government has not so responded. Thus, the only way the Government may introduce any 404(b) evidence would be during trial if the Court excuses pre-trial notice for good cause. Nonetheless, Defendant argues that evidence of Defendant's prior misconduct should be excluded because it fails to meet the requirements outlined by the Supreme Court in *Evaristo*, and because it is unfairly prejudicial as it is likely to induce a jury to convicting Defendant based on the accumulation of prior acts, rather than the facts of this case. (Mot. at 4, Aug. 19, 2014). The Government has not filed an opposition or a non-opposition to Defendant's Motion. At this stage of the proceedings, it is difficult for the Court to make a ruling without much offered in pleadings from either side. The Court will not speculate as to which prior acts Defendant seeks to exclude, nor will it speculate as to any arguable offers of proof on the part of the Government. The Court is aware of the applicable law relating to 404(b) evidence and will accordingly address the issue along with any objections relative to its admission should any be later presented to the Court.

**Motion to Suppress**

Defendant moves to suppress evidence obtained in violation of Defendant's *Miranda* Rights. Specifically Defendant moves to suppress his statements made to the police during his custodial interrogation as well as the video interrogation filmed at the house where the alleged offense took place. (Mot. Suppress at 2, Sep. 11, 2014). Defendant maintains that his waiver of rights was involuntary as it was obtained through police coercion and threats. *Id.* Additionally, Defendant stated that he was told what to say by police officers prior to the filming of the interrogation. *Id.*

The Supreme Court of Guam has acknowledged that "[t]he Fifth Amendment of the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself." *People v. Hualde*, 1999 Guam 3 ¶ 20. "This privilege is fully applicable during a period of custodial interrogation." *Id.* (citing *Miranda v. Arizona*, 384 U.S. 436, 460-461, 86 S.Ct. 1602, 1620-21, 16 L.Ed.2d 694 (1966)). The Supreme Court of Guam has also stated that:

> To safe guard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the United States Supreme Court held in *Miranda* that suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation.

*People v. Santos*, 2003 Guam 1 ¶ 45 (citing, *Thompson v. Keohane*, 516 U.S. 99, 107, 116 S.Ct. 457, 462 (1995)).

Further, the Supreme Court of Guam has stated that "the voluntary, knowing and intelligent nature of a *Miranda* waiver is to be gleaned from the totality of the circumstances, which includes the 'background, experience and conduct of the defendant.'" *People v. Farata*, 2007 Guam 8 ¶ 46 (internal citations omitted). The issue of a "whether a *Miranda* waiver is not coerced and therefore valid depends on consideration of 'two distinct dimensions'":

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* "Before a criminal defendant's statements can be used against him, the People must prove, by a preponderance of the evidence that the defendant's statements were made knowingly, intelligently, and voluntarily." *People of Territory of Guam v. Muna*, 1992 WL 245624 at*4 (D. Guam A.D.). In *Muna*, the defendant argued that "the interrogating officer drafted the final (and incriminating) statement and that he was coerced into accompanying the officers to the station because the officers threatened to impound his car." *Id.* Further, although an expert psychologist testified that defendant's intellectual abilities "fell in the 'upper portion of the mild mental retardation range,' the Officer administering the waiver testified that after reading to Defendant each line on the waiver form, defendant said he understood the contents." *Id.* at *5. The Court in *Muna* ultimately found that the People showed, by a preponderance of the evidence that defendant's statements were made voluntarily. *Id.*

As previously mentioned, Defendant argues that his waiver of rights was involuntary as it was obtained through police coercion and threats. (Mot. Suppress at 2, Sep. 11, 2014). Additionally, Defendant stated that he was told what to say by police officers prior to the filming of the interrogation. *Id.* Defendant details his recollection of the events as follows:

> In the early morning on July 15, 2014, Police officers approached me while I was in Harmon near Tony's Body Shop. I asked the officer's what they wanted because I didn't know what was going on. I was a little drunk because I was drinking the night before. The police officers told me I was supposed to do a favor for them on another case but I never helped them. The police told me that because I didn't help them out, they were going to slam me with another case. The officer's began interrogating me as we drove around. They stopped to buy me food and kept asking me questions about if I know drug dealers. They showed me a camera and asked me if I knew some people but I didn't know who they were talking about. It was me and three officers in the car. In 2005, I was injured by police and I was scared I was going to get beaten up. The police threatened me that they were going to can me with another case if I didn't cooperate. They also told me I need to cooperate because I'm on probation. They took me to Tiyan to sign some papers. They asked me more questions about a robbery. They drove me around and asked me more questions. As we drove around they told me I have to be filmed and they told me what to say to the camera. I told the officers I didn't want to say these things on camera because I thought I was setting myself up for failure. They told me everyone has to do it and I have no choice. After they took the video, the officers drove me around more and asked me to give them evidence. They took me to get my clothes because they needed my clothes. They also took me to look for other things but I didn't know what they were talking about. After that, the police drove me to Agana lock up.

(Decl. of Shaun Martinez ¶¶ 3-17, Sep. 11, 2014).

The Government opposes Defendant's Motion and argues that no illegality occurred in the course of Defendant's case, and that his statements to police were made freely, knowingly, and voluntarily. (Opp'n Mot. at 3, Oct. 9, 2014). Specifically, the Government contends that there is no indication that Defendant ever misunderstood, expressed hesitation, or made any attempt to invoke his right to remain silent. *Id.* Additionally, the Government points out that Defendant has a lengthy criminal history, dating back to 2001, and it is doubtful that now Defendant suddenly felt pressured, coerced and threatened by police officers during an

interview. *Id.* The Government concludes that testimony will show by a preponderance that under the totality of the circumstances, Defendant's waiver was voluntarily, knowingly, and intelligently made, and his statements should not be suppressed. *Id.* at 3-4.

At the Suppression hearing on October 9, 2014, Officer J.C. Terlaje ("Officer Terlaje") testified as to his recollection of the events at issue. Officer Terlaje stated that he did not recall if Defendant was mirandized before getting into the police car, but that Defendant was taken transported voluntarily. (Testimony of Officer Terlaje, Digital Recording at 11:26:46, Oct. 9, 2014). On cross examination, Officer Terlaje testified that during the car ride, Defendant did not indicate any unwillingness to be in the car. *Id.* at 11:43:57. With regard to the custodial interrogation form at the Tiyan location, Officer, Terlaje stated that he filled out the case number, and Defendant filled out the rest of the form, including the place, date, time, name, and his initials. *Id.* at 11:47:15. Officer Terlaje stated that his practice is to provide a copy for the other person to read along. *Id.* at 11:45:56. Officer Terlaje stated that he read the form line by line and asked if the Defendant understood it and to sign his initials to acknowledge his understanding, which Defendant did. *Id.* at 11:46:34-11:48:10. Further, Officer Terlaje testified that he used a regular tone of voice during the interrogation, and did not use any threats to get Defendant to talk. *Id.* at 11:48:47; 12:03:06.

Officer J.I. Aguon ("Officer Aguon") testified that he did not participate in the interrogation. (Testimony of Officer Aguon, Digital Recording at 3:43:05, Oct. 9, 2014). Officer Aguon stated that he told Defendant that he was to perform a video reenactment of what he had *already* told Officer Terlaje. *Id.* at 3:47:46. With regard to the break in the video footage, Officer Aguon testified that the cameraman had stopped recording but when Officer Aguon realized that he forgot to ask some questions, the cameraman resumed the recording. *Id.* at 3:54:10. Officer Aguon's testimony corroborated Officer Terlaje's testimony in that Officer Terlaje never raised his voice at Defendant, nor did Officer Terlaje threaten Defendant. *Id.* at 4:01:00-4:06:51. Finally, Officer Aguon testified that Defendant appeared to be in the right state of mind and did not appear to be under the influence of any substances. *Id.* at 4:07:37.

Defendant also took the stand and testified that no one read him the waiver form; he read it himself. (Testimony of Shaun Martinez, Digital Recording at 4:08:30, Oct. 9, 2014). Defendant testified that he was told what to say on the video recording. *Id.* at 4:17:18. Next, Defendant testified that he was "drugged out" when the officers picked him up. *Id.* at 4:18:16. Finally, Defendant testified that Officer Aguon told him he had no choice but to do the reenactment because everyone does it. *Id.* at 4:30:00.

The Court must point out some inconsistencies in Defendant's testimony. First, Defendant stated that he was drugged out when he was picked up by the Officers. Yet, Defendant's declaration stated that he was a little drunk because he was drinking the night before. (Decl. of Shaun Martinez at 1 ¶ 5, Sep. 11, 2014). Next, when testifying about filling out the custodial interrogation form, Defendant first said that the Officer's gave him the form and left him alone, but then Defendant testified that the Officers were asking him questions while he was filling out the form. (Testimony of Shaun Martinez, Digital Recording at 4:23:53, Oct. 9, 2014).

Having gleaned the totality of the circumstances, including Defendant's background, experience, conduct, and credibility, the Court concludes that Defendant's waiver of his Miranda rights at the Tiyan station was made voluntarily, knowingly, and intelligently. Also, the Court concludes that Defendant's waiver was made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Officer Terlaje testified that he read the waiver form to Defendant and that Defendant acknowledged his understanding of such waiver when he initialed the form. Although Defendant claimed to have been drunk, drugged out or not in the right state of mind, Officer Aguon testified that Defendant appeared to be in the right state of mind and not under the influence of any substances. Based on the totality of the circumstances, the Court finds that the Government has shown, by a preponderance of the evidence that the Defendant's statements were made knowingly, intelligently, and voluntarily, and further, that Defendant understood the waiver of his rights. On that basis, the Court will DENY Defendant's Motion to Suppress.

//

## CONCLUSION

For the foregoing reasons the Court hereby DENIES Defendant's Motion *in limine* to preclude the Government's use of Defendant's prior acts pursuant to GRE 404(b). Without any offer of proof from the Government, the Court cannot make a sufficient ruling at this time. Should, however, the issue present itself at a later time, the Court will reconsider whether any 404(b) evidence shall be admitted or excluded. Further, upon finding that the Government has met its burden of establishing by a preponderance of the evidence that Defendant's statements were made knowingly, intelligently, and voluntarily, the Court hereby DENIES Defendant's Motion to Suppress.

**IT IS SO ORDERED** this 12th day of November, 2014.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

//

//

//